UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Plaintiff,

    v.

MIXT GREENS, INC., et al.,

    Defendants.
_____/

No. C 13-0957 PJH

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    The parties' cross-motions for summary judgment came on for hearing before this court on March 19, 2014. Plaintiff Travelers Property Casualty Company of America ("Travelers") appeared by its counsel Jess Millikan; defendant Cal-Murphy LLC ("Cal-Murphy") appeared by its counsel Wesley Lowe and Herbert Yanowitz; and defendants NOP 560 Mission LLC ("NOP") and Hines Interests Limited Partnership ("Hines") appeared by their counsel Francis Scollan. Defendant Mixt Greens, Inc. ("Mixt Greens") did not appear.[1] Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS Travelers' motion and DENIES Hines/NOP's motion as follows.

## BACKGROUND

    Defendants Mixt Greens and Cal-Murphy both operated restaurants in a building located in San Francisco, California. The building is owned by defendant NOP, and during the relevant time period, defendant Hines was the property manager. Mixt Greens operated a grill inside its restaurant, which, for a period of time, was connected to two ducts

---

[1] Mixt Greens' default was entered on November 15, 2013.

that passed through Cal-Murphy's space, Murphy's Deli.

Travelers issued a primary Commercial General Liability ("CGL") policy ("primary policy") to Mixt Greens for the period March 23, 2008 to March 23, 2009, and also issued a Commercial Excess Liability ("Umbrella") policy ("excess policy") to Mixt Greens, for the same one-year period (collectively, "the Mixt Greens policy").

In 2008, Cal-Murphy and its individual owners filed a lawsuit in San Francisco Superior Court against Mixt Greens, NOP, and Hines (Case No. CGC 08-473750 – "the Underlying Action").  Cal-Murphy and its owners alleged various theories of misconduct related to Cal-Murphy's tenancy in the building, including that when Murphy's Deli began operations in April 2005, Hines/NOP provided what later proved to be an inflated estimate of the number of people who worked elsewhere in the building; that Hines/NOP refused Murphy's Deli's request to install a grill, but allowed Mixt Greens to do so; that the ventilation system was not properly installed, with the result that the offensive odor of cooking oil from Mixt Greens' operation was emitted into Murphy's Deli; that the building owners failed to install signs directing customers to Murphy's Deli, as promised; and that the building management had in various ways interfered with the business operations of Murphy's Deli.

Mixt Greens tendered its defense to Travelers.  In a letter dated June 3, 2008, Travelers advised Mixt Greens that coverage was denied for punitive damages.  In a letter dated June 14, 2008,[2] Travelers accepted the tender and stated that "there would be coverage . . . under your policy because the plaintiffs allege 'property damage' occurred when the ducts were installed into their restaurant and there were offensive odors that are a result of the grill being used in the Mixt Greens space."  However, Travelers stated, "[t]here would be no coverage" for the allegations of nuisance and injunctive relief, nor for personal injury, advertising injury, or attorney's fees.  In a letter dated May 1, 2009, also addressed to Mixt Greens, Travelers reiterated that punitive damages were not covered.

---

[2] The parties agree that the June 14, 2008 letter was actually not sent until early 2011.

In the fifth amended complaint, filed March 30, 2011, Cal-Murphy asserted claims of fraud (against NOP and Hines); negligent misrepresentation (against NOP and Hines); breach of implied covenant of good faith and fair dealing (against NOP); unjust enrichment (against NOP); trespass (against NOP and Mixt Greens); maintenance of a nuisance (against NOP and Mixt Greens); injunctive relief (against NOP and Mixt Greens); rescission (against NOP); and trespass (against NOP, Hines, and Mixt Greens).

Only four causes of action were asserted against Mixt Greens – the fifth cause of action for trespass, the sixth cause of action for nuisance, the seventh cause of action for injunctive relief, and the ninth cause of action (also for trespass). In the trespass and nuisance causes of action, Cal-Murphy sought to recover for "loss of profits."

According to copies of orders submitted by Travelers, the Superior Court subsequently dismissed the fifth, seventh, and ninth causes of action; dismissed all causes of action brought by the individual plaintiffs; and granted Hines/NOP's motions for judgment on the pleadings. On March 5, 2012, the court granted summary judgment as to the fifth cause of action for trespass, and on May 11, 2012, denied reconsideration of the summary judgment order.

In March 2012, Hines/NOP tendered the Underlying Action to Mixt Greens and Travelers for defense and indemnity. In a letter dated July 11, 2012, Travelers rejected the tender as to Hines/NOP.

As of time the present action was filed on March 4, 2013, only the sixth cause of action for nuisance was still being litigated in the Underlying Action, and only by Cal-Murphy against Mixt Greens. All causes of action asserted against Hines/NOP in the Underlying Action had been dismissed, although an appeal is ongoing.

In the interim, Mixt Greens has in some fashion been liquidated. The California Secretary of State lists it as a dissolved California corporation. Allegedly, in January 2012, MG Restaurants acquired the assets of Mixt Greens. On December 24, 2013, Cal-Murphy filed another action in San Francisco Superior Court, against MG Restaurants as the successor to Mixt Greens.

3

In the present action, Travelers asserts four causes of action, seeking (1) a judicial declaration that it has no further duty to defend Mixt Greens in the Underlying Action under either the primary policy or the excess policy; (2) a judicial declaration that it has no duty to indemnify Mixt Greens under the primary policy or the excess policy; (3) a judicial declaration that it has no duty to defend Hines/NOP (as indemnitees of Mixt Greens) in the Underlying Action under the primary policy or the excess policy; and (4) a judicial declaration that it has no duty to indemnify Hines/NOP in connection with the Underlying Action.

On May 21, 2013, Hines/NOP filed an answer to the complaint, and also filed a counterclaim.  Among other things, the counterclaim alleges that pursuant to Mixt Greens' lease with NOP and the Xtend Endorsement to the Mixt Greens policy, Hines/NOP are additional insureds under the policy.  The counterclaim asserts three causes of action – (1) breach of contract; (2) breach of the implied covenant; and (3) a claim for declaratory relief as to Travelers' obligation to defend and indemnify Hines and NOP with regard to the claims in the underlying action.

At the October 31, 2013 case management conference, the court stayed discovery and motion practice on the duty-to-indemnify claims, and severed those claims pending resolution of the Underlying Action.  The court ordered that the case could proceed on the duty-to-defend claims only.

Travelers and Hines/NOP each filed motions for partial summary judgment. Travelers seeks summary judgment as to its first and third causes of action (no duty to defend Mixt Greens, and no duty to defend Hines/NOP as indemnitees of Mixt Greens); and Hines/NOP seek summary judgment as to its third cause of action (that Travelers owes Hines/NOP a duty to defend in the Underlying Action).

**DISCUSSION**

A.   Legal Standards

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is

4

no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.     Duty to Defend

Under Montrose Chemical Corp. v. Superior Court, an insurance carrier's duty to defend its insured from a third-party lawsuit extends broadly to require that the carrier defend all suits which even potentially seek damages that are within the scope of the policy. Id., 6 Cal.4th 287, 299 (1993); see also, e.g., Lebas Fashion Imports v. ITT Hartford Ins. Grp., 50 Cal. App. 4th 548, 556-57 (1996) (duty to defend may be excused only "when third-party complaint can by no conceivable theory raise a single issue which would bring it

5

within the policy coverage"). However, the insurer is not required to defend against speculative, unpled claims. Gunderson v. Fire Insurance Exch., 37 Cal. App. 4th 1106, 1114 (1995).

In evaluating whether a duty to defend exists, the insurance carrier must base its decision on the facts presented to it at the time of tender. Id.; Montrose, 6 Cal. 4th at 295. In making this decision, the carrier must consider the allegations raised in the third-party complaint, and any extrinsic evidence presented by the insured, and the carrier must also conduct a reasonable investigation into the circumstances of the claim. Anthem Electronics, Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1054-55 (9th Cir. 2002) (citations omitted).

A determination of coverage under an insurance policy is considered a question of law and is thus appropriate for summary judgment. Waller v. Truck Insurance Exch., Inc., 11 Cal. 4th 1, 18 (1995). Due to the high burden of proof borne by the insurer, however, the insurer can prevail on summary judgment only if "there is no genuine issue of material fact as to the potential for coverage." Anthem, 302 F.3d at 1055 (citation omitted).

C.   The Policies

The CGL policy provides coverage against liability for damages that the insureds may incur on account of "property damage," "bodily injury," "web site injury," "advertising injury," and various "personal injury" offenses (false arrest, malicious prosecution, slander, libel, wrongful eviction/entry, etc.). "Property damage" is defined as "physical injury to tangible property," which includes "all resulting loss of use of that property;" and "loss of use of tangible property that is not physically injured."

Hines/NOP was an additional insured under the Mixt Greens primary policy but only with respect to liability arising out of the ownership, maintenance, or use of the premises leased to Mixt Greens, and even then, not with respect to any "structural alterations, new construction, or demolition operations" performed by or on Hines/NOP's behalf.

The excess policy contains the same material terms and conditions as the primary policy, except that Hines/NOP is an additional insured only if there is primary coverage

under the CGL primary policy. Otherwise, the excess policy does not contain any duty to defend the Landlord (Hines/NOP).

D. The Cross-Motions

Travelers argues that it has no duty to defend Mixt Greens or Hines/NOP because the Underlying Action does not allege any liability that is covered or could potentially be covered by the Travelers policy.

Travelers contends that the Underlying Action does not expose Mixt Greens or Hines/NOP to potential liability for damages on account of "property damage."[3] As indicated above, the policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property;" and "[l]oss of use of tangible property that is not physically injured."

Travelers contends that Cal-Murphy does not seek damages in the Underlying Action on account of "property damage" within either prong of the policy definition. Travelers asserts that Cal-Murphy's contentions are not that Mixt Greens caused any physical damage to any of Cal-Murphy's tangible property, but rather that odors from Mixt Greens' cooking caused potential customers to stay away from Cal-Murphy's premises.

Travelers quotes Cal-Murphy's response to Travelers' interrogatory asking for a description of "each item of tangible property which was physically damaged by Mixt Greens' conduct," in which Cal-Murphy stated that "[t]here was a layer of grease inside of the exhaust duct that ran from Mixt Greens' grill and cooking equipment through Cal-Murphy's space that created a fire hazard;" and that Mixt Greens' conduct "also caused noxious fumes and offensive odors that permeated Cal-Murphy's space and damaged Cal-Murphy and caused loss of use of the space."

Travelers argues, however, that the exhaust duct was not Cal-Murphy's property,

---

[3] The defendants appear to have conceded that the Underlying Action does not expose Mixt Greens or Hines/NOP to potential liability for damages on account of "personal injury." As modified by the Web Xtend Endorsement, the policy defines "personal injury" to include wrongful eviction, entry, or invasion, and the interference with the tenant's occupancy must be "performed by or on behalf of" the owner/landlord. Here, the odors that allegedly infiltrated Cal-Murphy's space were generated by Mixt Greens, not by Hines/NOP.

7

and notes that Cal-Murphy does not contend that Mixt Greens is liable to pay anything on account of physical damage to the duct – that is, it does not seek the cost of repairing or replacing the duct.  Rather, Travelers asserts, Cal-Murphy stipulated in January 2014 that the damages it was seeking in the Underlying Action were "calculated by reference to Cal-Murphy's alleged loss of sales, earnings and profits and Mixt Greens' profits, and are not based on the cost of repairing or replacing any tangible property as a result of Mixt Greens' operations."

Travelers argues that loss of customers does not constitute "loss of use of tangible property," because Cal-Murphy was never forced to close Murphy's Deli, and because the only claimed "loss" was a loss of revenue because of a decline in customer patronage. Travelers notes that Cal-Murphy has conceded that in its responses to requests for admission that "Mixt Greens' conduct . . . did not cause [Cal-Murphy] to close any portion of Murphy's Deli . . . for any period of time."  Travelers argues that loss of customers does not constitute "loss of use of tangible property," and that courts construe this phrase to refer to things, not customers.

Defendants argue that Travelers must continue to defend Mixt Greens because Cal-Murphy's claim falls under the policy's definition of "property damage," as it is a claim for "loss of use of tangible property," not a claim for economic damages.

Under the definitions in the current CGL forms, "loss of use of tangible property" constitutes "property damage" even if that property is not physically damaged.  Consistent with an insured's reasonable expectations, "tangible property" refers to things that can be touched, seen, and smelled.  Warner v. Fire Ins. Exchange, 230 Cal. App. 3d 1029, 1034 (1991); see also Kazi v. State Farm Fire and Cas. Co., 24 Cal. 4th 871, 880 (2001).

For purposes of a CGL policy, "tangible property" is property "having physical substance apparent to the senses." Giddings v. Indus. Indem. Co., 112 Cal. App. 3d 213, 219 (1980); see also Schaefer/Karpf Productions v. CNA Ins. Co., 64 Cal. App.4th 1306, 1316 (1998) ("tangible property" means "property (as real estate) having physical substance apparent to the senses"); Gunderson, 37 Cal. App. 4th at 1119 (same).

Under California law, general liability policies do not cover purely economic losses such as those alleged by Cal-Murphy. See Waller, 11 Cal. 4th at 26-27 (corporate mismanagement by majority shareholders which resulted in minority shareholder's economic loss was not covered by CGL policy); see also Advanced Network, Inc. v. Peerless Ins. Co., 190 Cal. App. 4th 1054, 1061-62 (2010) (theft of money from ATM not "loss of use" under CGL policy); Collin v. American Empire Ins. Co., 21 Cal. App. 4th 787, 817-19 (1994) (conversion does not constitute "loss of use"); Chatton v. National Union Fire Ins. Co., 10 Cal. App. 4th 846, 859 (1992) (no recovery for loss of economic or pecuniary interest or for investment loss brought about by negligent misrepresentations of insured); Allstate Ins. Co. v. Interbank Fin. Servs., 215 Cal. App. 3d 825, 830-31 (1989) (insurer not required to defend against lawsuits alleging that insured sold fraudulent tax shelter investments); Giddings, 112 Cal. App. 3d at 219 (lost profits, loss of goodwill, loss of anticipated benefit of bargain, loss of an investment are strictly economic losses and do not constitute damage or injury to tangible property covered by a CGL policy).

Defendants urge the court to adopt a strained interpretation of "loss of use." In interpreting policy provisions, the court should whenever possible construe a term using its plain meaning. Waller, 11 Cal. 4th at 18. Under the plain meaning of "loss of use," the insured must have been deprived of the use of its tangible property.

In arguing that the alleged reduction in profits due to loss of customers because of fumes and odors is covered "loss of use of tangible property," defendants rely primarily on three cases – Borg v. Transamerica Ins. Co., 47 Cal. App. 4th 448 (1996); Hendrickson v. Zurich Am. Ins. Co., 72 Cal. App. 4th 1084 (1999); and Essex Ins. Co. v. Bloomsouth Flooring Corp., 562 F.3d 399 (1st Cir. 2009).

In Borg, the plaintiff tendered the defense of a third-party lawsuit to his homeowners' insurer. The third-party suit alleged damages on account of a structural encroachment (a deck) from his real property over adjoining real estate belonging to the third party. The third party claimed that the encroaching deck made his property not saleable. Under the policy, "property damage" was defined as "physical injury to, destruction of, or loss of use

9

of tangible property." The court assumed without deciding that the physical encroachment on the third party's real property constituted "loss of use" of the third party's tangible property. Id., 47 Cal. App. 4th at 457-58. However, the dispute among the parties was not whether the encroachment constituted "loss of use," but rather whether the insurer had properly denied coverage on the basis that the loss had occurred outside the policy period.

In Hendrickson, the owners of a commercial nursery brought an action against their insurer for failure to defend and indemnify them in a third-party action. In the underlying action, strawberry growers alleged that the nursery negligently sold them strawberry plants that had been damaged by an aerially sprayed herbicide, and advised them that the damaged plants would eventually produce a normal yield. The growers refrained from re-planting in reliance on this assurance, and claimed damages for loss of production. The policy defined "property damage" as both "physical injury to tangible property," and "loss of use of tangible property which is not physically injured." The court found that the loss of strawberry production, and the related loss of use of fields, constituted "property damage." Id., 72 Cal. App. 4th at 1091-92.

In Essex, the defendant was hired as a subcontractor to install carpet tiles in a Massachusetts office building. After the building's occupants moved back in, they noticed an unpleasant odor. The defendant subcontractor replaced the carpet, but that did not solve the problem. The general contractor eventually spent in excess of $1.4 million for remediation efforts, and filed suit against the subcontractor. The general contractor also demanded that the defendant's insurer defend and indemnify it. The insurer filed a declaratory relief action, seeking a declaration that because of various risk exclusions in the policy, it was not required to defend or indemnify either the general contractor or the subcontractor. The court found a duty to defend because the underlying complaint alleged "physical injury to tangible property" within the meaning of the policy, and, in particular, found that an odor that permeates a building (as opposed to simply permeating the air) can constitute physical injury to tangible property. Id., 562 F.3d at 405-06.

None of these cases supports a finding that the odors emitted from the ducts into

Murphy's Deli should be deemed a "loss of use of tangible property" and thus a covered loss. In Borg, it was undisputed that the plaintiff's deck physically encroached onto the third party's real property, which deprived the third party of his ownership rights. In Hendrickson, the strawberry growers planted damaged plants in their fields, with the result that the land was not available for the growers to plant other plants. In Essex, the odor that permeated the building necessitated $1.4 million worth of remediation (removal of carpet, blasting of concrete floor, replacement of carpet, installation of special carbon filters), all of which the court found sufficient to support a claim of "physical injury" to the building.

Here, the Underlying Action does not involve any potential liability for damages on account of "property damage" as that term is defined in the Mixt Greens policy. The only damages Cal-Murphy seeks from Mixt Greens in the Underlying Action are for economic losses. The fact that Cal-Murphy does not seek to recover the cost of repairing or replacing any tangible property, and that no part of its restaurant was ever closed because of the odors – not even for an hour – compels the conclusion that Cal-Murphy's losses, which are purely economic, are not covered under the policy and Travelers is not obligated to defend Mixt Greens or Hines/NOP in the Underlying Action.

The "Supplementary Payments" clause, as modified by the Web Xtend Endorsement – argued by Hines/NOP as an alternative basis for coverage – is also inapplicable because Hines/NOP and Mixt Greens did not fulfill the necessary pre-conditions. Neither Hines/NOP nor Mixt Greens made a request of Travelers to "conduct and control the defense" of the Underlying Action, and Hines/NOP never provided the written authorization to obtain records and other information and to control and conduct the defense of the suit.

Finally, it appears that Hines/NOP also seeks an order that Travelers has a duty to pay for previously-incurred defense costs. Under California law, "[t]he defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded . . . or until it has been shown that there is no potential for coverage." Montrose, 6 Cal. 4th at 295. Here, the "no voluntary payments" provision of the CGL policy arguably relieves Travelers of liability for pre-tender expenses. See, e.g., Tradewinds Escrow, Inc.

11

v. Truck Ins. Exch., 97 Cal. App. 4th 704, 711-12 (2002). Nevertheless, Hines/NOP asserts in its reply to Travelers' opposition that its motion does not seek an order directing Travelers to make a payment "at this time," and argues that the "tender" and "no voluntary payments" provisions are not at issue in this motion.

## CONCLUSION

In accordance with the foregoing, the Travelers' motion is GRANTED, and Hines/NOP's motion is DENIED. This order fully adjudicates Travelers' first cause of action against Mixt Greens[4] and third cause of action against Hines/NOP, and Hines/NOP's third counterclaim against Travelers, to the extent they are based on the duty to defend.

With regard to the remaining claims regarding the duty to indemnify, the parties shall meet and confer and submit within 21 days a status statement advising the court as to how they wish to proceed.

**IT IS SO ORDERED.**

Dated: March 25, 2014

PHYLLIS J. HAMILTON
United States District Judge

---

[4] It is not entirely clear that it was necessary for Travelers to seek summary judgment as to the duty-to-defend claim against Mixt Greens, given that default was entered against Mixt Greens well before the present motion was filed.

12